IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LARKIN DERKS,

    Plaintiff,

v.                                     CASE NO. 5:15-cv-51-MW-GRJ

CORIZON LLC, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff's claims in this case stem from the medical care that he has received as an inmate in the custody of the Florida Department of Corrections where he is serving a sentence with a current release date in 2043. It is undisputed that Plaintiff suffers from chronic serious medical conditions, including disorders of the spine and both shoulders, and that he uses a wheelchair for mobility. The Defendants are Corizon Health, LLC, and ARNP Davis, Dr. Raquel Skidmore, and Dr. Gregory Ladele, who were medical providers at Northwest Florida Reception Center (NFRC), where Plaintiff was confined when the complaint was filed. Plaintiff recently was transferred to the Central Florida Reception Center. ECF No. 54.

Plaintiff alleges that Defendants have violated his constitutional rights

and his rights under the ADA and the Rehabilitation Act by failing to provide recommended specialized neurological and orthopedic care for his chronic medical conditions.  Plaintiff alleges that a neurologist at the FDOC's Lake Butler Reception and Medical Center referred him for a neurosurgical consultation, but that Corizon cancelled all inmate consultations with specialists after being awarded the FDOC contract for prison health care.  Plaintiff alleges that Corizon has a policy of refusing to provide necessary specialized care to save money.  *See* ECF Nos. 1, 7 (verified original complaint and amended complaint).  Plaintiff seeks injunctive and monetary relief.  *Id*.

The Defendants have moved for summary judgment, disputing that Plaintiff's care has been based on any considerations other than medical judgment.  ECF No. 42.  In the opinion of the physicians, Plaintiff's conditions have been managed appropriately with conservative treatment.  *See id*.  Defendants contend that the individual Defendants therefore were not deliberately indifferent to Plaintiff's medical needs.  Defendants contend that Plaintiff 's claims are not cognizable under the ADA and the Rehabilitation Act, and that Plaintiff has identified no evidence that Corizon had an improper policy regarding medical decisions that violated his

constitutional rights. *Id*.

For the following reasons, the undersigned recommends that the motion for summary judgment be denied without prejudice pursuant to Fed. R. Civ. P. 56(d) and that this case be remanded for further proceedings, including designation of counsel for Plaintiff.

## I.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard and will be liberally construed.  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).  Further, for purposes of summary judgment, in addition to considering Plaintiff's sworn declaration submitted in opposition to the motion, ECF No. 46, the Court may also consider the factual allegations contained in his verified pleadings.  *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991); *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir. 1980); *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965).

Moreover, in considering a motion for summary judgment, the Court has several options if a nonmovant shows that he cannot present facts that are essential to justify opposition to the motion.  Under such

circumstances, the Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.  Fed. R. Civ. P. 56(d).

## II.  DISCUSSION

The Constitution forbids prison officials from consciously ignoring the serious medical needs of prison inmates.  Such "deliberate indifference" to an inmate's serious medical need by a state actor is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976).  Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, can't show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985).  But "[d]eliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."  *See Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).  Choosing an easier but less efficacious course of treatment can also demonstrate deliberate indifference. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Defendants' evidence reflects that prior to entering FDOC custody in November 2009, Plaintiff suffered shoulder and neck injuries in a motor vehicle accident in 2008. MRIs of his shoulders revealed full thickness rotator cuff tears and degenerative joint disease (DJD) in both shoulders. Plaintiff was awaiting approval for surgery prior to his incarceration but never had surgery. After his incarceration, Plaintiff complained of shoulder issues and was seen by a neurologist and treated with ibuprofen and muscle relaxants. ECF 42-5 ¶¶ 6-7 (Declaration of Dr. Skidmore)[1].

Plaintiff sustained a back injury in November 2012. Plaintiff's complaints included low back pain and difficulty walking. He was issued a cane for walking. Plaintiff subsequently underwent diagnostic procedures and treatment at RMC Lake Butler. Radiology examination revealed "extensive degeneration of the fifth lumbar disc with marked narrowing of the corresponding intervertebral space, some grade of narrowing of the fourth lumbar intervertebral space is also observed." ECF No. 42-2 at 36. Plaintiff's complaints of pain continued into March 2013. An MRI was limited due to patient movement but demonstrated disc bulges at the L2-3, L4-5, and L5-S1 level. The study was also consistent with discogenic

---

[1] Dr. Skidmore's declaration summarizes the medical records, but she did not treat Plaintiff until December 2013.

degenerative disease (DDD).   ECF 42-5  ¶¶ 8-11; *see* ECF No. 42-2 at 35.

In June 2013, Plaintiff was referred by a provider at Gulf CI for a neurology consultation at RMC due to increased low back pain and a new restriction to a wheelchair due to pain and numbness in his right leg, and based on previous diagnostic findings of disc bulges at L2-3, L4-5, and L5-S1.  ECF No. 42-3 at 92.  ECF No. 42-3 at 92.  The neurologist, Dr. Gama, assessed Plaintiff with multilevel DJD and DDD of the lumbar spine mainly at L2-3, L4-5, and right side L5-S1.  He referred Plaintiff for electromyelogram (EMG) and nerve conduction study (NCS) of his right leg.  ECF No. 42-3 at 93.

Following these studies, in September 2013, Dr. Gama again examined Plaintiff and assessed him with (1) "moderate to severe (R) low back pain due to L4-5 disc bulge/herniation to (R) also multilevel DDD DJD;" (2) peroneal nerve atonol motor neuropothy suspect pressure related; (3) gait difficulty.  *Id*. at 95.  Based on these findings Dr. Gama recommended a neurosurgical consultation.  *Id*.

It is undisputed that Plaintiff was never referred for a neurosurgical consultation.  Dr. Skidmore saw Plaintiff for the first time in December 2013, and concluded that Plaintiff's back and shoulder problems could continue to be treated conservatively.   Plaintiff filed grievances,

complaining that he was in constant severe pain and confined to a wheelchair, and that the prison's new medical provider, New Horizon (Corizon), did not want to pay for specialized medical care. *See* ECF No. 42-4 at 4.

In March 2014, Dr. Skidmore canceled Plaintiff's neurosurgery consult "because his testing results revealed no significant abnormalities." ECF No. 42-5 ¶ 21. As support, Dr. Skidmore notes that Plaintiff's EMG was normal and the NCS revealed only mild or moderate neuropathy in his right peroneal nerve, his diagnostic testing results did not show spinal cord compression or spondylolisthesis, and he did not exhibit signs of significant nerve involvement such as foot drop or bladder and bowel issues. *Id*. Dr. Skidmore opines that Plaintiff's DDD and DJD is "moderate" and "age-consistent," and that the standard of care for back pain such as plaintiff's includes the treatment Plaintiff has received: medications including aspirin, NSAIDs, steroid injections, analgesic balm, muscle relaxants, and auxiliary aids. *Id*. ¶¶ 22-28. Dr. Skidmore similarly opined that nonsurgical conservative management was the proper course of treatment for Plaintiff's rotator cuff arthropathy. *Id*. ¶¶ 23-24. Dr. Skidmore denies that her care of inmates was based on anything other than her medical judgment, examinations, and medical records, and states that Corizon did not have a

policy to deny patients medically indicated specialist consultations or surgery. *Id.* ¶ 29.

Dr. Skidmore did not treat Plaintiff after April 2014. Plaintiff continued to present at the prison clinic for complaints of back and shoulder pain, as well as other complaints. His treatment included medication and steroid injections for his shoulders. A December 2014 Xray of his lumbar spine reflects DDD at L4-5 and L5-S1. Dr. Ladele assessed Plaintiff with persistent neuropathy in the low back and prescribed Robaxin, a muscle relaxant. Dr. Ladele saw Plaintiff again in January 2015 and continued the Robaxin, but did not see Plaintiff again after that visit. ECF No. 42-3 at 17-18.

In June 2015, ARNP Davis reviewed Plaintiff's request for renewal of his Robaxin prescription. She determined that there was no clinical documentation to support the need for a muscle relaxant. In July 2015, a physician denied Plaintiff's request for renewal of his Robaxin prescription. ECF No. 42-3 at 9-10. Plaintiff's prescription was renewed in November 2015. *Id*. at 64.

Dr. Ladele's opinion is identical to Dr. Skidmore's in material respects. Dr. Ladele states that in his opinion, Plaintiff's chronic medical conditions were appropriately treated with conservative treatments and his

clinical records do not show that surgery was indicated. Dr. Ladele states that Plaintiff's care was based on his providers' exercise of their independent medical judgment, examinations, and review of medical records, and not on any Corizon policy to deny patients medically indicated specialist consultations or surgery. ECF No. 42-1 (Ladele Declaration).

In the verified Amended Complaint, Plaintiff contends that after Corizon assumed the contract for health care at his prison, he was informed that "*all* consultations with specialists were cancelled pending reevaluation by Corizon Medical." ECF No. 7 at 8. In his "statement of claims" Plaintiff alleges that Defendants' actions amounted to "discrimination due to cost of care" in violation of his rights. *Id*. at 10. Although Plaintiff's allegations are less than artful, they are entitled to the benefit of liberal construction. Liberally construed, Plaintiff has alleged in his verified pleading that the decision to cancel Dr. Gama's referral to a neurosurgeon was based on considerations of cost and Corizon's policy of not paying for specialized care in order to contain costs. *See* ECF No. 7. This construction is consistent with Plaintiff's administrative claims asserting that the neurosurgical consult was canceled because Corizon "does not want to pay for operation as specified, needed, by DOC specialists." ECF No. 42-4 at 4. A medically unjustified delay or a decision

to use less effective treatment to save money could be deliberate indifference within the meaning of the Eighth and Fourteenth Amendments.[2]

The hurdle for Plaintiff on this summary judgment record is that he has not provided evidence in support of his allegations that Defendants' decisions were made to save money rather than, as they attest, based on medical judgment. In the same vein, Corizon may be held liable for constitutional violations under 42 U.S.C. § 1983 only if its policy or custom caused the constitutional injury. *See Fields v. Corizon Health, Inc.,* 490 F. App'x 174, 181–182 (11th Cir. 2012). The Corizon Defendants argue that "Plaintiff cannot identify any specific Corizon policy or custom that directly led to any constitutional violation." ECF No. 42 at 32.

In his declaration in opposition to summary judgment, Plaintiff contends that because a motion to compel was "unanswered" he was unable to provide "document of 9-23-16 [sic] consult", apparently pertaining to Dr. Gama's referral. ECF No. 46 at 3. In his brief, Plaintiff also states that he "was unable to receive discovery documentation." ECF No. 44. Plaintiff's brief does not explain exactly what evidence he did not receive.

---

[2] *See Gaffney v. Corizon Health, Inc.*, Case No. 4:15-cv-349-MW-GRJ ECF No. 51 (order denying summary judgment).

The record reflects that he did attempt to obtain evidence regarding Defendants' policies for inmate healthcare. During discovery, Plaintiff filed a motion to compel pertaining to discovery requests he propounded, one of which sought "any and all policies, directives, or instructions to staff governing sick-call procedures in general population." ECF No. 38 at 8. Defendants objected to the request as irrelevant. *Id*. at 13. The Court determined that the motion was due to be denied with respect to this request because it seemed to pertain to whether Plaintiff was actually seen by medical staff and not whether he received adequate care. ECF. No. 51. Viewing the record as a whole, Plaintiff's request may fairly be read as an inartful attempt to obtain discovery regarding Corizon's policies with respect to cost as a factor in providing specialized medical care to inmates.

Plaintiff's medical conditions are undisputedly serious, chronic, and painful and the record, as it currently stands, suggests that Plaintiff's claims could have merit if they have proper factual support. On this record, the Court concludes that Plaintiff should be afforded an opportunity to further develop the facts necessary to support his opposition to Defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(d).

Accordingly, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 42, be **DENIED without prejudice**

pursuant to Fed. R. Civ. P. 56(d)(1), and that this case be remanded to the undersigned for further proceedings, including designation of counsel from the District's Volunteer Lawyers' Project to represent Plaintiff.[3]

**DONE AND ORDERED** this 15th day of August 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[3]The Court previously denied without prejudice Plaintiff's motion for appointment of counsel. ECF No. 26. The court does not have authority to *require* an attorney to represent an indigent litigant. *See Maitland v. The United States District Court for the S.D. Iowa*, 490 U.S. 296, 301–02 (1989). However, under 28 U.S.C. § 1915(e)(1), the court may *request* representation for Plaintiff.